IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:16-CV-300-FL

| SIERRA CLUB, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF TRANSPORTATION; JAMES H. TROGDON III, SECRETARY, NCDOT; FEDERAL HIGHWAY ADMINISTRATION; JOHN F. SULLIVAN, DIVISION ADMINISTRATOR, FHWA; U.S. FISH AND WILDLIFE SERVICE; and PETE BENJAMIN, FIELD SUPERVISOR, USFWS, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for fee award and expenses pursuant to Section 11(g)(4) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4). (DE 52). Defendants Federal Highway Administration ("FHWA"), John F. Sullivan ("Suillivan"), U.S. Fish and Wildlife Service ("FWS"), and Pete Benjamin ("Benjamin") (collectively, "federal defendants") responded in opposition, and plaintiff replied. Defendants North Carolina Department of Transportation ("NCDOT") and James H. Trogdon, III ("Trogdon") (collectively, "state defendants") made no response, and the deadline to do so has elapsed. In this posture, the issues presented are ripe for ruling. For reasons noted, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff initiated this action December 29, 2016, seeking review of decision by defendants FHWA and NCDOT to authorize, fund, seek permits for, and otherwise advance construction of the U.S. 70 Havelock Bypass ("the Bypass") in Craven County, North Carolina. Plaintiff sought review of record of decision ("ROD") approving the Bypass and environmental impact statement ("EIS") prepared in support thereof, pursuant to the National Environmental Policy Act, 42 U.S.C. § 4331, et seq. ("NEPA") .

Plaintiff amended the complaint as of right March 20, 2017. In the amended complaint, plaintiff alleges, in the first claim for relief, that defendants violated Section 4(f) of the Department of Transportation Act, 23 U.S.C. § 138 et seq.; 49 U.S.C. § 303 et seq. ("Section 4(f)"), where the Bypass as planned would use property subject to Section 4(f) despite existence of prudent and feasible alternatives such as improvements to existing U.S. 70. Plaintiff alleges, in the alternative, that defendants failed to undertake all possible planning to minimize harm to areas protected by Section 4(f).

In the second claim for relief, plaintiff alleges that defendants failed to evaluate properly the comparative merits of studied alternatives in violation of NEPA. In the third claim for relief, plaintiff alleged that defendant failed to analyze the direct, indirect, and cumulative environmental impacts of the Bypass, in violation of NEPA. In the fourth claim for relief, plaintiff alleged that defendants failed to prepare a supplemental EIS following discovery of significant new information, in violation of NEPA. On its Section 4(f) and NEPA claims, plaintiff proceeds under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

Plaintiff also asserts three claims under the Endangered Species Act, 16 U.S.C. §§ 1531 et

seq. ("ESA"). In the fifth claim for relief, plaintiff alleges that FHWA violated the ESA when it failed to consult formally with FWS regarding the Bypass's likely impacts on the endangered red-cockaded woodpecker. In the sixth claim for relief, plaintiff alleges that FHWA violated the ESA when it failed to insure that the Bypass is not likely to jeopardize the continued existence of the red-cockaded woodpecker. Finally, in the seventh claim for relief, plaintiff alleges that FWS violated the ESA when it concurred in defendant NCDOT's determination that the Bypass is not likely to affect adversely the red-cockaded woodpecker.

Also in March 2017, defendants answered the amended complaint and the parties filed a Rule 26(f) joint report and plan, which plan the court largely adopted as its own in case management order issued April 12, 2017. Over the following year, the parties engaged in settlement negotiations and sought various extensions to the case management order to accommodate same. On April 30, 2018, the parties informed that settlement negotiations were fruitful and resulted in a settlement agreement that would resolve all claims. On May 25, 2018, the court granted plaintiff's motion for voluntary dismissal with prejudice while retaining jurisdiction to adjudicate the instant motion.

## STATEMENT OF THE FACTS

The facts pertinent to the instant motion may be summarized as follows. The Croatan National Forest ("the Croatan") is the only national forest in eastern North Carolina. (DE 25 ¶ 16; DE 31 ¶ 16; DE 32 ¶ 16). The Croatan includes approximately 160,000 acres of land, most of which is located in Craven and Carteret counties. (Id.). The Croatan is bordered by the Neuse River, the Bogue Sound, the White Oak River, and the Trent River. (Id.). The City of Havelock sits between the Neuse River and the northeastern edge of the Croatan. (Id.).

The red-cockaded woodpecker is an endangered species present in the Croatan. (Id. ¶ 20).

3

According to defendant FWS's "Recovery Plan" for the red-cockaded woodpecker, "[n]ational forests have a vital role in recovery of red-cockaded woodpeckers." (Id.).

Regular and frequent "prescribed burns," which involve controlled burning within a forest for purposes of wildland management, are essential to restoration and maintenance of the Croatan's lands. (Id. ¶ 24). In particular, prescribed burns are designed to reduce risk of hazardous fire within the Croatan. (Id.). Moreover, prescribed burns aid in protection of the red-cockaded woodpecker where suppression of naturally occurring wildfires can change forest composition and structure to the detriment of the ecosystem upon which the red-cockaded woodpecker relies. (Id. ¶ 25).

Highway U.S. 70 is an east-west corridor that serves as the primary route from Raleigh to New Bern, Havelock, and Morehead City. (Id. ¶ 30). The Bypass is planned to be a divided, four-lane, 10.3-mile, controlled-access highway running southwest of Havelock and the Cherry Point U.S. Marine Corps Air Station. (Id. ¶ 32). The Bypass will travel near or between Sunset Drive, Lake Road, and the Southwest Prong Flatwoods Natural Heritage Area, all of which is within the Croatan. (Id. ¶ 33).

Although many of the pertinent NEPA documents are not before the court, the pleadings and filings pertinent to the instant motion indicate no vigorous dispute as to the history of administrative proceedings leading to issuance of the ROD. (See id. ¶¶ 36–56). As relevant here, administrative proceedings in furtherance of the Bypass project began in 1992 when various state and federal agencies determined that the Bypass would likely result in significant environmental impacts such that NEPA would require an EIS. (Id. ¶ 36). A draft environmental impact statement ("DEIS") was published in September 2011. Plaintiff and others submitted comments on the DEIS complaining of various alleged shortcomings including that the DEIS failed to include a Section 4(f) evaluation,

4

that assumptions regarding prescribed burning were poorly explained or unsupported, that the DEIS failed to analyze a range of reasonable alternatives, and that the DEIS failed to take a hard look at direct, indirect, and cumulative impacts of the Bypass on affected areas. (Id. ¶ 42).

In 2013, defendant NCDOT performed additional studies regarding the Bypass, including the red-cockaded woodpecker biological assessment ("RCW biological assessment"). (DE 57-2). In the RCW biological assessment, NCDOT studied anticipated effects of the Bypass on the red-cockaded woodpecker which study resulted in "biological conclusion" of "May Effect [sic], Not Likely to Adversely Affect." (Id. at 83). Defendant FWS concurred with the "May Affect, Not Likely to Affect" determination on November 19, 2013. (DE 57-1 at 2–3). In bold print, FWS's concurrence letter cautions that "it is important to note that this concurrence is also based, in part, on NCDOT's agreement to allow periodic closures of the bypass in order for Croatan National Forest staff to conduct prescribed burns as management for the RCW." (Id. at 2). FWS states also that, "[w]ithout this agreement, [FWS] would be unable to conduct the necessary prescribed burns in the vicinity of the Bypass, thus causing an indirect adverse effect on the [red-cockaded woodpecker]." (Id.).

The final environmental impact statement ("FEIS") was released for public comment in December 2015. (DE 25 ¶ 51; DE 31 ¶ 51; DE 32 ¶ 51). During the subsequent comment period, plaintiff reiterated some of its complaints lodged originally in address of the DEIS in addition to several new comments. (Id. ¶ 51). Of note here, plaintiff commented that analysis in the FEIS relied upon assumption that sufficient prescribed burning would occur at various times after construction of the Bypass while the documents memorializing plans for prescribed burning provided few details and no enforcement mechanism to guarantee that burns would take place. (DE

5

25 ¶ 51b).

Plaintiff submitted additional comments addressing a draft burn agreement between defendants NCDOT and USFS, which draft purportedly would commit the agencies to undertake necessary road closures and prescribed burns after construction of the Bypass. (Id. ¶ 52; DE 31 ¶ 52; DE 32 ¶ 52). After submitting comments on the draft burn agreement, plaintiff attended a meeting and exchanged followup letters with NCDOT and USFS regarding the draft burn agreement. (Id. ¶¶ 53–54). While no copies of plaintiff's comments or the parties' followup letters are before the court, it is undisputed that the parties' exchanges regarding the draft burn agreement did not satisfy plaintiff. Accordingly, the amended complaint includes allegations pertinent to plaintiff's position that defendants failed to enter into enforceable commitments to undertake necessary prescribed burns after construction of the Bypass. (See DE 25 ¶¶ 90a; 95a; 103; 113–14).

As noted, following entry of the case management order, the parties engaged in fruitful settlement negotiations, culminating in a settlement agreement between plaintiff and state defendants. (DE 53-5). The settlement agreement requires NCDOT to transfer $7,300,000 to the North Carolina Coastal Legal Trust ("CLT") to establish the Croatan Protection Fund and to establish a revolving loan fund. (DE 53-5 § 1). Additionally, the settlement agreement imposes upon NCDOT a number of requirements pertaining to construction methods for the Bypass and requires NCDOT to cooperate with USFS road closure requests to effect USFS prescribed burn plans. (Id. § 2).

The settlement agreement imposed no requirements on federal defendants, but federal defendants and USFS issued three letters to facilitate settlement. (See DE 53-2; DE 53-3; DE 53-4). The first letter, dated March 28, 2018, is authored by defendant FWS and addresses defendants

6

FHWA and Sullivan. (DE 53-2). The March 28, 2018, letter reiterates that FWS's November 19, 2013, concurrence letter was premised upon understanding that prescribed burns would continue after construction of the Bypass, in part, for the benefit of the red-cockaded woodpecker. (Id.). The letter also acknowledges FWS's understanding that if certain new information or circumstances arise, FHWA and NCDOT must reconsider any conclusions under the Section 7(a)(2) ESA. (Id.). Finally, the letter memorializes FWS's assessment that NCDOT and FHWA should conduct prescribed burns in accordance with the recovery plan for the red-cockaded woodpecker or NCDOT and FHWA should revise or supplement the existing RCW biological assessment. (Id.).

The second letter, dated April 10, 2018, constitutes FHWA's response to the March 28, 2018, letter. (DE 53-3). In that second letter, FHWA represents that it will fulfill its obligation to re-evaluate environmental impacts of the Bypass if new information reveals impacts that may affect the red-cockaded woodpecker in a manner not previously considered in the RCW biological assessment. (Id.). Moreover, FHWA represents that it will work with NCDOT to revise or supplement the RCW biological assessment and consult with FWS if it does not conduct prescribed burns in accordance with the recovery plan for the red-cockaded woodpecker. (Id.).

The third letter, also dated April 10, 2018, is authored by USFS and addresses plaintiff. In that letter, USFS represents that, until April 10, 2033, it intends to provide voluntarily to plaintiff copies of prescribed burn plans that are completed in the Bypass area. (DE 53-4). Additionally, USFS represents that, during the same period, it will notify plaintiff when any scheduled prescribed burn is completed, or, if a scheduled burn is not completed, USFS will identify briefly the reason(s) the scheduled prescribed burn was not completed. (Id.).

**DISCUSSION**

A.  Standard of Review

The ESA provides that "[t]he court, in issuing any final order in any suit brought pursuant to [the citizen suit provision of the ESA], may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.". 16 U.S.C. § 1540(g)(4). Where, as here, a fee-shifting statute allows award of attorney fees "whenever appropriate[,]" courts in the Fourth Circuit apply the "catalyst theory," which holds that "parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits may be eligible for attorney fees . . . ." Ohio River Valley Envtl. Coalition, Inc. v. Green Valley Coal Co., 511 F.3d 407, 414 (4th Cir. 2007). "Catalyst recovery" requires the movant to establish three elements, namely, that movant obtained some of the benefit sought, that its claims were not frivolous, and that its actions caused the benefit obtained. Id. at 415.

B.  Analysis

   1.  Entitlement to Fee Award

In the instant matter, there is no dispute that plaintiff's ESA claims are not frivolous. Moreover, there is no dispute that plaintiff's actions caused state defendants to enter the settlement agreement and caused federal defendants to produce two letters. Thus, plaintiff's entitlement to attorney fees hinges on whether it obtained "some of the benefit sought." Id.

To determine whether plaintiff obtained some of the benefit sought, "the initial focus [is] on establishing the precise factual/legal condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden." Combs by Combs v. School Bd. of Rockingham Cty., 15 F.3d 357, 361 (4th Cir. 1994). "With this condition taken as a bench mark, inquiry may

then turn to whether as a quite practical matter the outcome . . . does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition." Id. However, a party need not succeed on every claim, or even on its central claims, to obtain attorney fees. J.D. ex rel. Davis v. Kanawha Cty. Bd. of Educ., 571 F.3d 381, 386 (4th Cir. 2009). Rather, attorney fees are available to "partially prevailing parties where the action served to promote the purposes of the act" under which attorney fees are sought. West Virginia Highlands Conservancy, Inc. v. Norton, 343 F.3d 239, 246 (4th Cir. 2003) (citing Nat. Wildlife Fed. v. Hanson, 859 F.2d 313 (4th Cir. 1998)).

The purposes of the ESA "are to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of [pertinent] treaties . . . ." 16 U.S.C. § 1531(b). Accordingly, where the red-cockaded woodpecker is listed as an endangered species, and where the settlement agreement secures no less than $7,300,000 for preservation of the red-cockaded woodpecker and its habitat, plaintiff's successful settlement negotiations "promote the purposes of the [ESA]." See West Virginia Highlands Conservancy, 343 F.3d at 246. Therefore, award of attorney fees is appropriate in this instance. See 16 U.S.C. § 1540(g)(4).

Federal defendants argue that plaintiff is entitled to no fee award where none of the benefits plaintiff obtained in settlement correspond to the prayer for relief set forth in the amended complaint. Indeed, the amended complaint requests declaratory judgment, injunction, and vacatur of the ROD, and plaintiff obtained no relief of that nature in litigation or settlement. However, this argument fails where attorney fees are available to "partially prevailing parties where the action served to promote the purposes of the act" under which attorney fees are sought. See West Virginia

9

Highlands Conservancy, 343 F.3d at 246. As held, plaintiff obtained relief through settlement that promotes preservation of the red-cockaded woodpecker and its habitat; therefore, a fee award is appropriate. See id.

2. Apportionment of Fee Award

Federal defendants argue that, even if some fee award is appropriate, state defendants should be liable for such award on the ground that the settlement agreement between plaintiff and state defendants constitutes the entirety of benefit obtained by plaintiff. While there is no Fourth Circuit authority directly on point of which the court is aware, the court agrees with the Ninth Circuit that a fee award grounded in the fee claimant's success against a certain party must be awarded against that party. See Idaho Conservation League v. Russell, 946 F.2d 717, 720–22 (9th Cir. 1991).

Applying this standard, federal defendants are correct that the settlement agreement with state defendants, which imposes significant monetary liability and definite requirements regarding construction methods and prescribed burning, constitutes the main relief plaintiff obtained in this action. (See DE 53-5). Further, where USFS is not a party to this action, it cannot be said that the April 10, 2018, letter authored by USFS constitutes "some of the benefit sought" in the complaint. Therefore, any award to be paid by federal defendants must be grounded in the two letters exchanged between defendant FWS and FHWA on March 28, 2018, and April 10, 2018, respectively. (See DE 53-2; DE 53-3).

While the record pertaining to federal defendants' earlier understanding of its obligations under the ESA is not developed fully, the RCW biological assessment addresses prescribed burning in areas affected by the bypass. For example, the RCW biological assessment notes that "if the NCDOT road closure enables the USFS to conduct prescribed burning necessary to restore and maintain suitable [red-cockaded woodpecker] habitat, the potential for adverse effects will be

reduced. Habitat quality is directly related to habitat management." (DE 57-2 at 81). The foregoing observation states only that if prescribed burning occurs, it may benefit the red-cockaded woodpecker. (See id.). Such language cannot be deemed a substitute for FHWA's April 10, 2018, letter, which represents affirmatively that if a minimum level of prescribed burning does not occur, FHWA will revise or supplement the RCW biological assessment and consult with FWS in that process. (See DE 53-3 at 2).

Moreover, nothing in the RCW biological assessment states the federal defendants' views regarding necessity of updating any documents in light of new information that may arise, while both agencies' letters indicate express commitment to update pertinent documents if material new information is discovered. (See DE 53-2; DE 53-3). Accordingly, while the settlement agreement comprises the bulk of relief plaintiff obtained in settlement, federal defendant's letters also confer benefits that support award of attorney fees. Namely, where federal defendants' commitments to conduct prescribed burns and update documents in light of new information previously were ambiguous at best, plaintiff's actions caused federal defendants to solidify those commitments. For this reason, in its discretion and as they request, federal defendants shall be liable for 20 percent of the award granted under this order, while state defendants shall be liable for the remainder.

3. Reasonableness of Hours Billed

While defendant concedes that plaintiff's counsel's claimed hourly rates are reasonable, defendant argues that counsel's bill includes excessive hours on several grounds. First, plaintiff's counsel concedes that it erroneously included entries related to eight hours of work by Sean Helle ("Helle") on a 60-day notice letter that should be excluded. Therefore, those eight hours shall be excluded. The remaining of 7.8 hours billed by Helle for work on the amended complaint is compensable.

Second, federal defendants contend that Helle's work addressing prescribed burning is not within the scope of plaintiff's challenge to the Bypass and, in any event, pertains to the actions of USFS, which is not a party to this action. However, this argument fails because issues regarding prescribed burning and its effect on the red-cockaded woodpecker within the Croatan are included on the face of the amended complaint. (See DE 25 ¶¶ 90a, 113). Therefore, the court will not reduce plaintiff's award on this basis. Moreover, where the court's previous determination that federal defendants shall be liable for twenty percent of this award accounts for the fact that plaintiff's success on issues of prescribed burning was obtained primarily from other actors.

Third, federal defendants contend that plaintiff's counsel's bill for 60 hours spent preparing the amended complaint is excessive. Courts in the Fourth Circuit have held that spending 16, 38.7, or 40 hours preparing a complaint or amended complaint is excessive. See Southwood v. CCDN, LLC, No. 7:09-CV-183-BR, 2017 WL 4012672, at *2 (E.D.N.C. Sep. 12, 2017); Corral v. Montgomery Cty., 91 F. Supp. 3d 702, 717 (D. Md. 2015); Evans v. Housing Auth. or City of Raleigh, N.C., No. 5:04-CV-291-FL-3, 2007 WL 5273736, at *9 (E.D.N.C. Nov. 28, 2007). However, each of the cited cases rests on fact specific determination that each complaint in question was relatively simple. Here, however, the court is cognizant that ESA claims, including those at bar, often involve analysis of large quantities of technical data relating to ecology, biology, and construction engineering, which analysis rarely may be drawn from previous litigation. Thus, on these facts, 60 hours to develop the amended complaint cannot be deemed unreasonable.

Fourth, federal defendants contend that plaintiff's counsel should not be compensated for reviewing public records obtained pursuant to the Freedom of Information Act, where such documents are not part of the administrative record. (See DE 54 ¶ 12). However, the case management order contemplates plaintiff's opportunity to challenge the administrative record on

the ground that federal defendants should have included additional materials. (DE 35 ¶ I.C.4.b). Therefore, where review of public records is a necessary aspect of due diligence in assessing completeness of the administrative record, any argument that such review of public records is unreasonable must fail.

Fifth, federal defendants contend that plaintiff's counsel should not be compensated for 6.1 hours for drafting and finalizing the retainer agreement with plaintiff. See Morse v. Republican Party of Va., 972 F. Supp. 355, 366 (W.D. Va. 1997 ("[T]he preparation of retainer agreement is time that normally would not be charged to a client."). Plaintiff makes no response to this point; therefore, any contrary argument is waived. Accordingly, hours billed preparing a retainer agreement shall not be included in this award.

Sixth, federal defendants argue that plaintiff's bill includes redundant time where, on several occasions, multiple attorneys participated in the same meeting. However, while federal defendants indeed have identified some examples of this billing practice, none of those examples stand out as unreasonable. Participation by multiple attorneys at occasional client meetings regarding settlement, conferences among attorneys to discuss strategy, and a status conference with the court is not excessive. Therefore, the court will not reduce plaintiff's award on this basis.

Finally, federal defendants contend that any award should be reduced to account for plaintiff's minimal degree of success on the merits, failure to eliminate time spent on non-ESA claims, and failure to account for time spent litigating against other defendants. As noted, in light of the nature of the "catalyst theory," the court does not view plaintiff's successes as minimal. See West Virginia Highlands Conservancy, 343 F.3d at 246. Moreover, the court has apportioned liability as between the state and federal defendants to account for time spent litigating against other defendants. Regarding time spent on non-ESA claims, declarations submitted in connection with

motion briefing establish that plaintiff already has adjusted its bill to account for time spent on non-ESA claims. (DE 54 ¶ 18).

In sum, with the agreed reduction of eight hours for time billed by Helle on a 60-day notice letter and reduction of 6.1 hours for preparation of a retainer agreement, the remainder of plaintiff's request, amounting to $133,095.00, is reasonable. Of that amount, state defendants are liable for 80 percent, or $106,476.00, and federal defendants are liable for 20 percent, or $26,619.00.

## CONCLUSION

For reasons noted, plaintiff's motion for fee award and expenses pursuant to Section 11(g)(4) of the ESA is GRANTED IN PART AND DENIED IN PART. Plaintiff is AWARDED $106,476.00 against state defendants and $26,619.00 against federal defendants.

SO ORDERED, this the 12th day of October, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge